UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SUSAN M. SHAW,<br><br>            Plaintiff,<br><br>   v.<br><br>KIOLO KIJAKAZI,<br>   Acting Commissioner of Social Security,<br><br>            Defendant. | Case No. 20 C 3121<br><br>Magistrate Judge Sunil R. Harjani |

## MEMORANDUM OPINION AND ORDER

Plaintiff Susan S.[1] brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the Commissioner's decision denying her application for disability insurance benefits (DIB) and supplemental security income (SSI).[2] Before the Court are the parties' cross-motions for summary judgment. For the reasons that follow, the ALJ's decision is affirmed, Susan's motion [19] is denied, and the Commissioner's motion [26] is granted.

## BACKGROUND

Susan had a total knee replacement in 2012, and as a result, never returned to her previous employment as a hotel linen distributor. (R. at 451, 868, 159). Shortly after her right knee replacement, Susan began experiencing left knee pain and back pain. *Id.* at 450. The medical records show that Susan was diagnosed with a myriad of health issues including hypertension,

---

[1] Pursuant to Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff by her first name and the first initial of her last name or alternatively, by first name.

[2] This Court ordered the parties to include a list of questions presented in support of remand or affirmance in its order of June 9, 2020. That order was ignored as neither party included a list of questions presented. Indeed, this is a case where it was particularly warranted, as claimant makes a plethora of arguments in support of remand in a particularly unorganized and scattershot fashion, resulting in a response brief that is equally difficult to follow. Failure to include a list of questions presented in the future will require the Court to strike the briefs.

calcification of coronary artery, lumbar degenerative disease, osteoarthritis of the left knee, peripheral vascular disease, depressive episodes, and gastroesophageal reflux disease. *Id.* at 416, 437, 519, 534, 647. Susan's treatment for those conditions included office visits, physical therapy, spinal epidural injections, medical imaging, and prescription medications, such as, gabapentin and hydrocodone/acetaminophen. *See, e.g.*, *id.* at 436, 450, 453, 539, 543, 597, 617, 744, 750, 978, 1142, 1193, 1196, 1786.

Susan initially filed for DIB and SSI on August 25, 2016, alleging disability beginning April 15, 2016. *Id.* at 92. Susan's claims were initially denied on July 12, 2017 and upon reconsideration on October 24, 2017. *Id.* at 124, 177. Susan then requested a hearing, and she appeared and testified at a hearing held on February 12, 2019 before ALJ Deborah E. Ellis. *Id.* at 36-91. At the hearing, the ALJ heard testimony from Susan and a vocational expert, Cheryl Hoiseth. *Id.*

On June 19, 2019, the ALJ issued an unfavorable decision denying Susan's claims. *Id.* at 15-28. Following the five-step sequential analysis, the ALJ found that Susan had not engaged in substantial gainful activity since April 15, 2016, the alleged onset date (step 1), and that she suffered from the severe impairments of degenerative disc disease, obesity, coronary artery disease, and peripheral vascular disease (step 2). *Id.* at 17-18. Subsequently, the ALJ determined that Susan's impairments did not meet or equal the severity of a listed impairment (step 3). *Id.* at 21.

Next, the ALJ concluded that Susan retained the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) and 20 CFR 416.967(b), with the following additional limitations:

> Four hours per day of standing/walking, frequent climbing ramps
> and stairs, no climbing ladders, ropes, or scaffolding, and frequent

> use of lower extremities for pushing/pulling or operation of foot controls. When sitting during the day, she may stand and stretch at the workstation but would not be off task more than up to 10% of the day.

*Id.* at 23. Given her RFC determination, the ALJ determined that Susan was capable of performing her past relevant work as a listing clerk (step 4). *Id.* at 28. As a result of this determination, the ALJ did not reach step five and denied Susan's application for DIB and SSI. *Id.* The Appeals Council denied her request for review on March 30, 2020, leaving the ALJ's decision as the final decision of the Commissioner. *Id*. at 1-5; *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015).

## **DISCUSSION**

Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the ALJ conducts a five-step inquiry: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals any of the listings found in the regulations, *see* 20 C.F.R. § 404, Subpt. P, App. 1 (2004); (4) whether the claimant is unable to perform her former occupation; and (5) whether the claimant is unable to perform any other available work in light of her age, education, and work experience. 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4); *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992); *Zalewski v. Heckler*, 760 F.2d 160, 162 (7th Cir. 1985). "An affirmative answer leads either to the next step, or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Zalewski*, 760 F.2d at 162.

Judicial review of the ALJ's decision is limited to determining whether it adequately discusses the issues and is based upon substantial evidence and the proper legal criteria. *See Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Substantial evidence is "more than a mere scintilla" and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148 (2019). Furthermore, "whatever the meaning of 'substantial' in other contexts," the Supreme Court has emphasized, "the threshold for such evidentiary sufficiency is not high." *Id.* In reviewing an ALJ's decision, the Court may not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the" ALJ's. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). The Court reviews the ALJ's decision deferentially and will affirm if substantial evidence supports the decision. *See* 42 U.S.C. § 405(g); *Biestek*, 139 S. Ct. at 1154; *Wright v. Kijakazi*, No. 20-2715, 2021 WL 3832347, at *5 (7th Cir. Aug. 27, 2021). Nonetheless, when the ALJ's "decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

Susan raises three main arguments in support of her request for reversal: (1) that the ALJ erred in assessing Susan's RFC; (2) that the ALJ erred in weighing the medical opinion evidence; and (3) that the ALJ erred in assessing Susan's subjective allegations. Susan contends that the ALJ failed to explain her decision on a plethora of issues within these categories, but on review, this Court must only determine whether the ALJ minimally articulated her analysis. The Court affirms the ALJ's decision because her findings are supported by substantial evidence, the Court can follow the ALJ's analysis in conducting a meaningful review, and a reasonable mind could accept the conclusion reached. Thus, this Court cannot and does not reweigh the evidence or

substitute its own judgment for that of the ALJ's. Accordingly, for the reasons stated below, more than a mere scintilla of evidence supports the ALJ's decision and remand is not appropriate.

    A.    RFC

Candice contends that the ALJ's RFC finding was not supported by substantial evidence. She asserts that: (1) an evidentiary deficit was created when the ALJ rejected both the state agency medical consultants' opinions and Dr. Veres's medical opinion; (2) that the ALJ improperly filled the RFC with her lay medical speculation; (3) that the ALJ erred in failing to explain how she determined that Susan would not have been off-task greater than ten percent of the workday when she stood from a seated position to stretch; and (4) that the ALJ erred in failing to explain why she did not include mild restrictions in concentration, persistence, or pace in her assessment of Susan's RFC. Doc. [19] at 9-11.

Susan's argument that the ALJ's RFC finding was not supported by substantial evidence lacks merit. An ALJ is not required to address every piece of evidence. *Knox v. Astrue*, 327 F. App'x 652, 657-58 (7th Cir. 2009). The ALJ need only "minimally articulate" her reasoning so as to build an accurate and logical bridge from the evidence to her conclusions. *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004). Here, the ALJ properly considered all of Susan's medical limitations. Specifically, the ALJ considered Susan's knee pain, her left leg pain and back discomfort, her history of atherosclerotic peripheral vascular disease, her coronary artery disease, her history of multilevel degenerative changes of the lumbar spine, and her obesity. (R. 24-25). Next, the ALJ considered the objective medical evidence supported by clinical and laboratory findings when she noted Susan's Vascular Doppler testing, her echocardiogram, her angioplasty, her MRI, and her physical examinations. *Id.* Furthermore, the ALJ considered Susan's testimony in different parts of the record. For example, the ALJ noted that Susan stated that she could only

walk for ¼ of a block several times, that she had a limiting standing tolerance, and that she was able to carry a walker up and down the stairs. *Id.*

In addition, the ALJ detailed medical visit notes indicating that Susan ambulated with a normal gait at times, that she did not appear to be in any distress while sitting, that she had normal lower extremity strength, that during a visit in 2017 she ambulated with a slow and cautious gait and a slightly flexed forward posture, and that she had a normal range of motion on another occasion. *Id.* The ALJ also considered Susan's prescription medicines and physical therapy referral. *Id.* at 25, 27. Additionally, the ALJ considered Susan's daily activities and found that her daily activities were not limited to the extent one would expect. *Id.* at 26. The ALJ referenced Susan's ability to prepare food daily, do laundry, drive, grocery shop, pay bills, and handle a savings account. *Id.* at 26, 27. Furthermore, the ALJ considered Susan's hearing testimony where she testified that she helped with dishes or sweeping and babysat her niece's 15-month-old child. *Id.* at 27. Thus, the ALJ sufficiently articulated her assessment of the record evidence.

In light of Susan's combination of impairments, the ALJ's RFC finding included: a restriction of 4 hours per day of standing or walking; frequent climbing ramps and stairs; no climbing ladders, ropes, or scaffolding; and frequent use of lower extremities for pushing/pulling or operation of foot controls. (R. at 26). Further, when sitting during the day, the ALJ determined she may stand and stretch at the workstation. *Id.* Furthermore, the ALJ reasoned that Susan's limitations combined warranted an up to 10% off task limit. *Id.* She then explained her determinations on standing and walking. The ALJ noted that at a consultative examination, Susan reported a problem with standing on her feet for very long, though, she managed to wash dishes, do laundry, and cook. *Id.* Additionally, the ALJ went on to discuss that Susan ambulated with a normal gait with no assistive device at an April 2017 consultive examination, that in November

6

2017 she reported use of a cane, but that she was ambulating independently without an assistive device in September 2018. *Id.* Next, she considered that Susan used a walker in January 2019, however, was able to carry the walker up and down the stairs using one of the two handrails. *Id.* The ALJ minimally articulated her reasoning when constructing the limitations to light work, including the 4 hours per day of standing/walking.

Moreover, contrary to Plaintiff's claims, no evidentiary deficit was created when the ALJ rejected both the state agency medical consultants' opinions and Dr. Veres's medical opinion. Generally, an "ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians" in determining a claimant's RFC. *Whitehead v. Saul*, 841 F. App'x 976, 982 (7th Cir. 2020). Ultimately, the ALJ bears "final responsibility" for determining a claimant's RFC, *Fanta v. Saul*, 848 F. App'x 655, 658 (7th Cir. 2021), and "[a]n ALJ adequately supports his RFC determination when he 'consider[s] all limitations supported by [the] record evidence' and 'tie[s] the record evidence to the limitations included in the RFC finding.'" *Vang v. Saul*, 805 F. App'x 398, 401-02 (7th Cir. 2020) (quoting *Jozefyk v. Berryhill*, 923 F.3d 492, 497-98 (7th Cir. 2019)); *see also Lyn P. v. Saul*, No. 19 C 1596, 2021 WL 2823089, at *7 (N.D. Ill. July 7, 2021) (finding that the ALJ sufficiently determined Plaintiff's RFC based on the evidence in the record, including medical evidence, diagnostic imaging, stage agency examinations and reports, and Plaintiff's own testimony and self-reports.).

While the ALJ did give little weight to the state agency medical consultants' opinions and Dr. Veres's medical opinion, no evidentiary deficit was created. The state agency medical consultants opined that Susan had the residual functional capacity for light work with no climbing ladders, ropes, or scaffolds, and occasional climbing ramps and stairs, stooping, and crawling. *Id.* at 27. A full range of light work "requires a good deal of walking or standing," and "[t]o be

7

considered capable of performing a full or wide range of light work, you must have the ability" to ambulate in a substantial manner. 20 CFR 404.1567(b). The ALJ assigned little weight to the state agency consultants because the ALJ did not believe Susan was capable of performing the full range of light work considering her spinal stenosis. *Id.* 27. That is, Susan's spinal stenosis would impede her from walking or standing for long hours. In declining to follow the state agency recommendations, the ALJ included the four hours per day of standing/walking limitation in her RFC.

Likewise, regarding Dr. Christine Veres's opinion—indicating that Susan had the residual functional capacity for less than sedentary work— the ALJ gave it little weight. The ALJ explained her reasoning as follows: the exam notes showed Susan's ability to ambulate; Susan decided to forego surgery; she was not compliant with physical therapy; and she had extensive daily activities. *Id.* Accordingly, ALJ considered all the limitations supported by the record and minimally articulated how the record evidence supported the limitations included in the RFC finding.

Furthermore, the ALJ's RFC was not based on lay medical speculation.[3] Susan bases much of that claim on the Seventh Circuit's *Lambert v. Berryhill* decision. *See* Doc. [19] at 4. She argues that "ALJs must rely on expert opinions instead of determining the significance of particular medical findings themselves."[4] *Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018). In

---

[3] Susan raises the same argument, accusing the ALJ of making improper medical conclusions, in her challenge of the medical opinion evidence addressed in section B of this opinion. There Susan argues that the ALJ engaged in impermissible medical speculation when she found that Susan's spinal or knee impairments could not have been as limiting as Dr. Veres found them to be. *Id.* at 12. To be clear, no such statement can be found in the ALJ's opinion, and Susan did not cite to the record when making this argument in her brief. The argument is rejected in section B for the same reasons as it is rejected in this section.

[4] Susan also contends that the ALJ should have summoned a medical expert who could have reviewed all pertinent evidence and who could have offered a reasoned assessment of Susan's ability to perform work

*Lambert*, the court found that the ALJ improperly gave little weight to the medical opinion of the claimant's treating neurosurgeon, in part because the ALJ disregarded the doctor's opinion and played doctor when he stated that "x-rays revealed good fusion and good position of the [sacroiliac] joint." *Id.* Plaintiff here has failed to indicate what specific medical finding the ALJ improperly interpreted at her own volition. Rather, Plaintiff appears to imply that the ALJ engaged in lay medical speculation simply by weighing the claimant's limitations, which is completely proper as it is the ALJ's duty to craft the RFC. While Susan frames this argument as a "lay medical opinion" or "playing doctor," argument, this is mislabeled, as she is really asking the Court to (impermissibly) reweigh the evidence. Moreover, Susan advances parts of the medical record, *see* Doc. [19] at 4-5, and claims that the ALJ did not consider that evidence. As stated earlier, the ALJ need not mention every detail in the record. *Gedatus v. Saul*, 994 F.3d 893, 901 (7th Cir. 2021). In sum, no evidentiary deficit was created and the ALJ did not insert any lay medical speculation here.

Next, Susan raises another unavailing argument. Citing *Lanigan v. Berryhill*, Susan complains that the ALJ erred in failing to explain how she determined that Plaintiff would not be off-task greater than ten percent of the workday when she stood from a seated position to stretch. 865 F.3d 558, 563 (7th Cir. 2017). In *Lanigan,* the claimant argued that the hypothetical RFC posed to the vocational expert was flawed because the ALJ failed to lay a foundation for certain limitations described in the hypothetical, including that he might be off task up to 10% of the workday. *Id.* The claimant further argued that the "ALJ had no basis to conclude that he wouldn't

---

tasks. (R. at 4). This Court has previously stated that this argument is meritless where the record "contained ample evidence, including multiple visits to doctors inside the relevant period." *Jesus P. v. Saul*, No. 19 C 2271, 2020 WL 3268515, at *10 (N.D. Ill. June 17, 2020). Furthermore, an ALJ's retention of a medical expert is discretionary and it is the plaintiff's burden, not the ALJ's to prove disability. *Id.*; see also *Summers v. Berryhill*, 864 F.3d 523, 527 (7th Cir. 2017).

9

be off task more than 10% of the time, especially given his unrebutted testimony that he was taking unscheduled breaks (sometimes for 20 minutes) three to five times during his five-hour shifts." *Id.* Here, Plaintiff does not argue that the ALJ's questioning of the vocational expert was erroneous, and therefore Plaintiff's reliance on *Lanigan* is inapposite. Furthermore, unlike in *Lanigan*, where there was evidence of plaintiff's need to take breaks, no such evidence exists here. *Id.* Additionally, Plaintiff does not point the Court to any part of the record indicating that Plaintiff would likely be off task for more than 10% of the time.

Susan next avers that the ALJ erred in failing to explain why she did not include Susan's mental limitations in her assessment of Susan's RFC. Doc [19] at 7. If a claimant "has a medically determinable mental impairment, then the ALJ must document that finding and rate the degree of functional limitation in four broad areas," which includes the category of "concentration, persistence, or pace." *Craft v. Astrue*, 539 F.3d 668, 674 (7th Cir. 2008) (citing 20 C.F.R. § 404.1520a(c)(3)). The ALJ will rate a claimant's degree of limitation in the four broad areas according to the following five-point scale: "[n]one, mild, moderate, marked, and extreme." 20 C.F.R. § 404.1520a(c)(4). If the ALJ rates a limitation as "none" or "mild," the ALJ will "generally conclude that [a claimant's] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities[.]" 20 C.F.R. § 404.1520a(d)(1). The Court reviews the ALJ's finding on the degree of a claimant's limitation for substantial evidence. *See, e.g.*, *Delong v. Saul*, 844 F. App'x 894, 900 (7th Cir. 2021); *Lockett v. Saul*, 834 F. App'x 236, 239 (7th Cir. 2020); *Underwood v. Astrue*, 430 F. App'x 532, 534 (7th Cir. 2011).

The Court finds that the ALJ considered Susan's non-severe mental impairments in her analysis. *See Monique B. v. Saul*, No. 19 C 652, 2020 WL 4208112, at *12–13 (N.D. Ill. July 22,

10

2020) (Plaintiff "points to no law requiring the ALJ to include mental limits in the RFC whenever the ALJ finds a mild impairment in an area of mental functioning at Step Two. And while an ALJ must consider limitations and restrictions imposed by an individual's impairments, even those that are non-severe, the RFC need only incorporate limitations supported by the claimant's medical record."); *Candice A. Z. v. Kijakazi*, No. 19 C 8174, 2021 WL 3187783, at *7 (N.D. Ill. July 28, 2021) ("By discussing the evidence related to [plaintiff's] mental health history and concluding that her limitations were not as severe as Candice alleged, the ALJ adequately considered her only minimal mental restrictions but determined that they did not support a functional limitation in the RFC."). In this case, the ALJ found that Susan's depression did not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and was therefore non-severe. (R. 19). In her Step Two analysis, the ALJ determined that Susan had a mild limitation in understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace. *Id.* at 19-20. The ALJ gave great weight to state agency psychological consultants who noted that Susan was able to recount some recent international and national news. Susan was also able to name the current and three immediately preceding United States' presidents and five large cities in the United States. *Id.* at 19, 868. The ALJ also considered Susan's own report that she had no problems getting along with family, friends, neighbors, or other people. *Id.* at 19. Regarding concentrating, persisting, or maintaining pace, the ALJ noted that the state psychological consultant indicated that her capacity for attention was mildly impaired, and her capacity for concentration was markedly impaired. *Id.* at 20. Furthermore, the ALJ noted that at some medical visits Susan reported poor concentration or focus. *Id.* However, in her adult function report, Susan did not indicate that she had problems with concentration. *Id.* In fact, Plaintiff reported that she could pay attention for ½ hour to 1 hour and had no problems following

written or spoken instructions. *Id.* Lastly, the ALJ added that at the time of reconsideration, the claimant had just started treatment for depression for the situational problems she was experiencing. *Id.* at 19. In light of this evidence, Susan has not demonstrated how the record supports a mental limitation in the RFC. Nor has she suggested what an appropriate limit may be in this case. *See Jozefyk,* 923 F.3d at 498; *Monique,* 2020 WL 4208112, at *12–13. Even so, the ALJ supported her analysis of Susan's non-severe mental impairments in the RFC with evidence that was more than a mere scintilla.

### B. Medical Opinion Evidence

Susan argues that the ALJ improperly rejected treating physician, Dr. Veres's medical opinion. Doc. [19] at 9. With respect to applications filed before March 27, 2017, ALJs must give "controlling weight" to a treating physician's opinion if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with other substantial evidence." *Burmester*, 920 F.3d at 512; *Kuykendoll v. Saul*, 801 F. App'x 433, 437 (7th Cir. 2020). "If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." 20 C.F.R. § 404.1527(c); *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009). However, an ALJ may discount the opinion of a treating physician, such as Dr. Veres's, if she provides good reasons for doing so. 20 C.F.R. § 404.1527(c)(2); *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010); *Whitehead,* 841 F. App'x at 981; *Elizabeth A. D. v. Saul,* No. 19 C 6024, 2021 WL 148831, at *7 (N.D. Ill. Jan. 15, 2021).

To begin, the ALJ gave good reasons for assigning little weight to Dr. Veres's opinion. Her reasons for discounting Ms. Veres's recommendations of less than sedentary work include: the radiological evidence showed mild spinal stenosis; exam notes which generally showed an

ability to ambulate without assistive device and full strength of extremities; Susan's decision to forego surgery and noncompliance with physical therapy; and Susan's daily living activities. (R. at 27). Additionally, the ALJ included, at the end of her analysis, that the state agency reviewers noted that at the time of Dr. Veres's opinion, the objective evidence showed full motor strength and range of motion in all extremities, normal gait, negative straight leg raise and slightly reduced lumbar range of motion. *Id.* at 27, 103, 105, 119. Thus, the ALJ met her minimal burden to articulate her reason for discounting Dr. Veres's opinion.

Nonetheless, at the time Susan filed her application, a treating physician's opinion was entitled to controlling weight. For that reason, Plaintiff argues that the ALJ's failure to weigh medical opinion evidence pursuant to the factors that the checklist delineates mandates remand. Doc. [19] at 9. Plaintiff is right to observe that the ALJ failed to expressly analyze Dr. Veres's opinion within the multifactor framework delineated in 20 C.F.R. § 404.1527(c)(2). However, the Seventh Circuit has recently said that it will not vacate or reverse solely on a failure to list every checklist factor, so long as the court is confident that the ALJ's reasoning sufficiently accounted for the substance of the prescribed factors. *See Karr v. Saul*, 989 F.3d 508, 512 (7th Cir. 2021); *Ray v. Saul*, 861 F. App'x 102, 105–06 (7th Cir. 2021). Here, the record provides confidence that the ALJ was clearly aware of and considered many of the (c)(2) factors and built a logical bridge between the evidence and her conclusions regarding the weight she gave to Dr. Veres's opinion.

First, the ALJ was evidently aware of the length, nature, and extent of the treatment relationship between Dr. Veres and Susan. While the ALJ did not expressly say it, the ALJ referenced Dr. Veres's treatment notes, other medical records that list Dr. Veres as Susan's primary care physician, and records that generally mention Dr. Veres, throughout her decision. *See* (R. 5, 15, 20, 26, 27, 542, 1276-77, 1418-1699, 1848-1849, 1801, 1823-1854, 1139-1224.). Further, the

ALJ addressed the supportability and consistency of Dr. Veres's opinion. The ALJ stated that the radiological evidence showed mild spinal stenosis, that Susan's exam notes generally showed an ability to ambulate without assistive device and full strength of extremities, that Susan did not pursue more aggressive care and did not comply with physical therapy, and that her daily living activities were extensive. (R. at 27). The ALJ also referenced the state agency reviewers' notes, stating that at the time of Dr. Veres's opinion, the objective evidence showed full motor strength and range of motion in all extremities, normal gait, negative straight leg raises and slightly reduced lumbar range of motion. *Id.* at 27, 103, 105, 119. In sum, the ALJ's decision makes clear that she sufficiently accounted for the substance of many of the factors. Thus, the failure to expressly discuss any remaining factors is harmless. *See Schreiber v. Colvin*, 519 F. App'x 951, 959 (7th Cir. 2013); *Karr*, 989 F.3d at 512; *see also Henke v. Astrue*, 498 F. App'x 636, 640 (7th Cir. 2012) ("The ALJ did not explicitly weigh every factor while discussing her decision to reject Dr. Preciado's reports, but she did note the lack of medical evidence supporting Dr. Preciado's opinion, and its inconsistency with the rest of the record. This is enough.").

Next, Susan argues that ALJ's reasons for discounting Dr. Veres's opinion was predicated on an impermissible selective recitation of evidence. Plaintiff takes issue with the ALJ's analysis that radiological evidence as well as treatment records—reflecting normal ambulation and strength—contradict Dr. Veres's medical opinion. (R. 11-12). Again, in this argument, Plaintiff lists parts of the record that the ALJ allegedly failed to consider and effectively asks the Court to reweigh the evidence. As this Court has stated, the ALJ need not mention every piece of evidence in the record, and the Court cannot reweigh the evidence. *Burmester,* 920 F.3d at 510. As discussed in the previous section, the ALJ acknowledged, considered, and confronted the evidence for and against a finding of disability, such as Dr. Veres's opinion and the state agency opinion, weighed

14

the evidence, and minimally articulated her analysis in crafting the RFC. *See Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004).

Finally, Susan argues that the ALJ improperly relied on the state agency medical consultants' opinion to discount Dr. Veres's prediction that Susan would be absent from work four days each month. Doc. [19] at 13. It is unclear to the Court how Susan reached this conclusion, because the ALJ never said that Dr. Veres's opinion was contradicted by the state agency medical consultants' opinions. As such, Susan's argument is nonsensical. For these reasons, the ALJ's assessment of Dr. Veres's opinion is supported by substantial evidence.

C. **Subjective Symptoms**

Finally, Susan argues that the ALJ improperly discounted her subjective symptom allegations. The Court will overturn an ALJ's evaluation of a claimant's subjective symptom allegations only if it is "patently wrong." *Burmester*, 920 F.3d at 510. An ALJ must justify his subjective symptom evaluation with "specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013); *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (patently wrong "means that the decision lacks any explanation or support."). When assessing a claimant's subjective symptom allegations, an ALJ must consider several factors, including the objective medical evidence, the claimant's daily activities, his level of pain or symptoms, aggravating factors, medication, course of treatment, and functional limitations. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, at *5, 7-8 (Oct. 25, 2017). Ultimately, "the ALJ must explain her [subjective symptom evaluation] in such a way that allows [the Court] to determine whether she reached her decision in a rational manner, logically based on her specific findings and the evidence in the record." *Murphy*, 759 F.3d at 816. And "[n]ot all of the ALJ's reasons must be valid as long as enough of them are." *Halsell v. Astrue*, 357 F. App'x 717, 722-23 (7th Cir. 2009).

In the present case, the ALJ properly considered Susan's daily activities and course of treatment, but she found them "not entirely consistent with the medical evidence and other evidence in the record." (R. 26). First, Susan contends that the ALJ improperly equated her daily activities with her ability to work[5] and used claimant's activities of daily living as evidence that a claimant had exaggerated her subjective allegations. Doc [19] at 14. As a general matter, the Seventh Circuit cautions against an ALJ equating the ability to perform certain daily activities with the ability to work full-time. *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013). Contrary to Plaintiff's characterization however, the ALJ did not discuss her daily activities to demonstrate that Plaintiff had the ability to work. Instead, all the ALJ said about Susan's activities—preparing food, doing laundry, driving, grocery shopping, paying bills, cleaning, doing dishes or sweeping, cooking, and changing diapers for the the15-month toddler that she babysat—when weighing her subjective complaints, was that they "are not limited to the extent one would expect given the complaints of disabling symptoms and limitations." (R. at 26). This is hardly equating daily activities with the ability to work full time. *See Kuykendoll*, 801 F. App'x at 439. Rather, the ALJ discussed Susan's daily activities in her assessment of Susan's subjective allegations, as she was required to do. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, at *5, 7-8 (Oct. 25, 2017).

Second, Susan argues that the ALJ erred when she rejected her subjective allegations based on the claimant's receipt of routine and conservative treatment. Doc. [19] at 15. An ALJ is entitled to consider the routine and conservative nature of a claimant's treatment in assessing the claimant's credibility. *See Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009); 20 C.F.R. § 404.1529(c)(3)(v). Furthermore, an ALJ can, by and large, discount a claimant's testimony in light of routine and

---

[5] Susan raises the same argument in her challenge of the medical opinion evidence addressed in section B of this opinion. The argument is rejected for the same reasons as it is rejected in this section. The ALJ adequately considered Susan's daily activities in analyzing Dr. Veres's opinion.

16

conservative treatment, so long as the ALJ does not unreasonably minimize the extent of the claimant's treatment, *see Huber v. Berryhill*, 732 F. App'x 451, 456 (7th Cir. 2018), or make assumptions about the claimant's failure to seek treatment without asking the claimant about the reasons for noncompliance, *see Jose L. v. Saul,* No. 18 C 4904, 2020 WL 264521, at *5 (N.D. Ill. Jan. 17, 2020); SSR 16-3p, 2017 WL 5180304, at * 5.

Here, the ALJ noted that Susan's back treatment was routine and conservative because she did not undergo back surgery and refused knee surgery. (R. at 27). Furthermore, in the same paragraph, the ALJ acknowledged that Susan treated with Norco. The ALJ also stated that Susan stopped attending her physical therapy appointments after five visits and was again recently referred. *Id.* Earlier in her opinion, the ALJ recognized that Susan did not want to undergo left knee surgery because she was "not pleased with the outcome" of her previous right knee surgery, and that she frequently cited lack of transportation as an explanation for her noncompliance and eventual discharge from more than one physical therapy cycle. *Id.* This despite the fact that the record indicates that Susan's treaters recommended knee surgery. *See Id*. at 520, 1220, 1223. The ALJ sufficiently justified her subjective symptom evaluation because she considered all of Susan's treatment and her reasons for noncompliance with surgery and physical therapy. Thus, the ALJ was not patently wrong in her evaluation.

## CONCLUSION

For the reasons set forth above, the Commissioner's motion [26] is granted, and the ALJ's decision is affirmed.

**SO ORDERED.**

Dated: January 5, 2022

Sunil R. Harjani
United States Magistrate Judge